# VACATION OF HOWARD ST., PHILADELPHIA.

APPEAL BY WILLIAM RICE ET AL. FROM THE COURT OF QUARTER SESSIONS OF PHILADELPHIA COUNTY.

Argued April 8, 1891—Decided May 27, 1891.

1. The provisions of § 6, act of April 21, 1858, P. L. 386, authorizing damages awarded to property owners for the *vacation* of a street in Philadelphia, to be assessed by the viewers directly upon the owners of property benefited, is not unconstitutional: Centre St., 115 Pa. 247.

2. Nor, is the act unconstitutional on the ground that such procedure is the taking of one man's property to pay the debts or damages due to another, for the basis of the assessment, as well as of the compensation, must be the special benefit or the special injury to the property affected by the vacation.

3. And the enactment is not inoperative because there is no express provision for the appointment of a jury to assess damages for the *vacation* of a street. The words of the act expressly assimilating the duties of

viewers for the opening and for vacation, the power in either case is necessarily implied.

Before PAXSON, C. J., GREEN, CLARK, MCCOLLUM and MITCHELL, JJ.

No. 229 January Term 1891, Sup. Ct.; court below, No. 6 January Term 1889, Q. S.

On January 25, 1889, John Hare, Jane Hare and Henry Siegele presented their joint petition representing:

That they were the owners of houses and lots on the northwesterly side of Howard street, northeast of Apple street, in the Twenty-first ward of Philadelphia; that by a decree of the Court of Quarter Sessions, made December 3, 1888, the said Howard street was vacated from the north side of Cresson street to the south side of Apple street; that said decree was made without the appointment of any jury of view, either to report upon the advisability of the same, or to assess damages for such properties as might be damaged; that the said vacation. of said Howard street had caused great damage to the properties of each of the petitioners, and had greatly depreciated them without corresponding benefits; praying the court to appoint a jury of view to examine the site of said street and to report what damage had been done to said properties.

Thereupon, the court appointed six viewers, who on July 5, 1889, filed a report awarding damages as follows: To John Hare, $825; Jane Hare, $200; Henry Siegele, $250; in all $1,275; in each instance specifying the properties damaged. The report set out, further, that the land of William Rice and others, trading as Rice, Bean & Co., situated on both sides of Howard street, between Cresson street and Apple street, had received special benefit from the said vacation of said Howard street, between said streets, and that said land was benefited by such vacation over and above any benefit which had been received by it in common with neighboring lands in general, and that said benefit was to an amount not less than $1,275. The jury, therefore, awarded to John Hare, $825; to Jane Hare, $200; to Henry Siegele, 250; in all, $1,275, which sum they assessed against said William Rice and others, trading as Rice, Bean & Co., owners of the land above mentioned.

Arguments.

On July 27, 1889, Rice, Bean & Co. entered appeals from the award of the viewers to the Court of Common Pleas: See Hare v. Rice, post, 608.

On July 29, 1889, the said Rice, Bean & Co. filed exceptions to the report of the viewers, inter alia, as follows:

15. Because no authority exists in law to select juries to assess damages for vacating streets, within the city of Philadelphia.

16. Because the jury had no authority in law to exercise any of the powers assumed by them under the appointment of the court.

17. Because the appointment of the said jury was unauthorized by law.

18. Because § 6, act of April 21, 1858, P. L. 386, under which the jury was appointed, is unconstitutional.

Thereupon, on June 12, 1889, on motion the court granted a rule upon the petitioners and all other parties in interest, to show cause why the appointment of the said jury of view should not be quashed.

On October 4, 1889, after argument, the court, without opinion filed, entered an order dismissing said exceptions and discharging the rule to show cause. Whereupon the exceptants took this appeal, specifying the order dismissing the exceptions and discharging said rule for error.

*Mr. Geo. P. Rich* (with him *Mr. Francis S. Cantrell*), for the appellants:

That § 6, act of April 21, 1858, P. L. 386, confers no power to *select* the jury, was open for argument, notwithstanding Centre St., 115 Pa. 247, counsel cited: McGee's App., 114 Pa. 470 ; Paul v. Carver, 24 Pa. 207 ; act of April 15, 1845, P. L. 449. That the state, not being interested in the payment of these damages, has no power to impose a special tax for their payment, under the name of benefits, upon individuals: Sharpless v. Mayor, 21 Pa. 147; Washington Ave., 69 Pa. 352; Philadelphia v. Tryon, 35 Pa. 401 ; Stroud v. Philadelphia, 61 Pa. 255 ; Hammett v. Philadelphia, 65 Pa. 146 ; act of April 1, 1864, P. L. 206; Philadelphia Ass'n v. Wood, 39 Pa. 73 ; Pittsburgh v. Scott, 1 Pa. 309; Kneass's App., 31 Pa. 87; Lance's App., 55 Pa. 16 ; Palairet's App., 67 Pa. 479: Ligat

v. Commonwealth, 19 Pa. 456.    Counsel cited also : Smedley
v. Erwin, 51 Pa. 445; Large v. Philadelphia, reported as a
note to Sower v. Philadelphia, 35 Pa. 231; Chestnut Ave., 3
Phila. 265; Norris's App., 61 Pa. 422; Moyer St., 6 Phila. 81.

*Mr. John Dolman*, for the appellees.

Counsel cited: Centre St., 115 Pa. 247; Big Black Imp.
Co. v. Commonwealth, 94 Pa. 450; Philadelphia v. Railway
Co., 102 Pa. 190; Schuylkill Nav. Co. v. Loose, 19 Pa. 15;
Washington Ave., 69 Pa. 352; Wray v. Pittsburgh, 46 Pa.
365; Sower v. Philadelphia, 35 Pa. 231; Gault's App., 33 Pa.
94; Desty on Taxation, 286; McMasters v. Commonwealth,
3 W. 292; Chester Co. v. Brower, 117 Pa. 647; In re Alley,
104 Pa. 622.

OPINION, MR. JUSTICE MITCHELL:

The most serious question presented by this appeal is the
constitutionality of the provisions of the act of April 21,
1858, § 6, P. L. 386, which direct that the damages awarded to
property owners for the vacation of a street shall be assessed
upon the owners of properties benefited.    It was held in Centre
St., 115 Pa. 247, that the imposition of the assessed benefit upon
the owner, instead of upon his land only, was within the dis-
cretion of the legislature, and that the act was not unconstitu-
tional on that account.    But it is argued in the present case
that the commonwealth's power of taxation is only for the pur-
pose of raising funds to discharge the public obligations; and
as, under the act, the state, or its representative the city, is not
interested in the payment of the damages, it has no power to
impose a special tax for their payment, under the name of ben-
efits, upon individuals; or, in other words, that such proced-
ure is taking the property of one man to pay the debts or damages
due to another, for the public benefit, and therefore outside the
limit of constitutional legislation.    In the case of opening or
widening streets, it is said, the city, as the agent of the com-
monwealth, is liable primarily for the damages, and it therefore
pays them to the parties injured and collects them from those
benefited; but, in the case of vacating streets, the city is not
bound to pay, and therefore cannot collect.    This is the corner-
stone of the argument, but it rests upon a misapprehension.

That the commonwealth was under no constitutional obligation to pay for the damage caused by vacating a street was decided in Paul v. Carver, 24 Pa. 207, and is so held under the present constitution: McGee's App., 114 Pa. 470. But it has never been held, nor, so far as I am aware, seriously contended, that the legislature might not put such obligation on the commonwealth or its agents by statute. The principle of compensation was extended by the present constitution so as to include, in certain cases, not only property taken, but property injured. This provision might have been, and to some extent was in fact anticipated by statutes providing for such compensation by assessments in the nature of special and local taxation. The progress of such taxation is tersely sketched by AGNEW, J., in Washington Ave., 69 Pa. 352, 358–360, through its various stages; first, local municipal taxation for roads, bridges, culverts, schoolhouses, and other local improvements; next, assessments upon certain properties for improvements of special advantage to them, such as footwalks, pavements, etc., and, finally, the assessment of such benefits, and the application of the money so raised to pay the compensation due others for their property taken. This mode has long been established in Philadelphia and in some other cities of the commonwealth, in regard to the taking of land for the opening and widening of streets. By the act of 1858, the legislature took another step forward in the same direction, and extended the system to the consequential injury caused in the city of Philadelphia by the vacation of streets. It was clearly within the legislative power to do so. The basis of the assessment, as well as of the compensation, was the special benefit or the special injury to the properties concerned, and that principle has been held to sustain legislation of this character through the whole history of the commonwealth.

Nor is the mode in which the principle is applied by the act of 1858 beyond the legislative discretion. The jury is directed to ascertain both damages and benefits, and to apply the latter directly to the payment of the former. This is doing directly by a single proceeding what had usually been done theretofore by two separate acts. But it is in effect no more, and no different from assessing the benefits in favor and the damages against the city, which are thus collected with one hand and

paid out with the other. In the city of Philadelphia it has of late years been the usual practice to pay contractors for paving and like municipal improvements by assessment bills upon the property owners liable, and letting the contractors collect them at their own risk and expense. Suits were brought in the name of the city, to use, etc., but the connection of the city with the proceeding was of the slightest and most technical nature. It was but a step beyond this to drop the city out of the procedure entirely, and pass the money directly from the hand which had ultimately to pay to the hand which was ultimately to receive. As said by AGNEW, J., in Washington Ave., supra: "His money, it is true, passes directly into their compensation, but this is merely to avoid circuity of payment by an immediate appropriation of his tax. In principle, therefore, it is an independent transaction, and is the same thing as the money paid by an abutting lotowner for the pavement before his door, into the public treasury, and thence paid out to the paver of the street. Yet in that case what difference would it make were the money of the abutting lotowner appropriated directly to pay the paver, provided his assessment be made on the principle of his paying according to his proportionate benefit?" So here, we see no transgression of the limits of legislative authority by the provision for the direct assessment of the damages upon the parties benefited, always, of course, keeping within the fundamental principle of such special taxation, that it shall be measured by the special benefit. The method is subject to some serious inconveniences, and the form of expression is not good, as the language taken literally might imply that the damages to be assessed upon the properties benefited were to be measured by the injury to the others rather than by the benefit to themselves, which would be clearly unconstitutional. But such has not been the construction of this or similar acts, and no such question arises in this case. The inconveniences of the act are matters of legislative, not judicial consideration.

We have thus considered the constitutionality of the act at some length, because, in the case of Centre St., 115 Pa. 247, the attack upon it was made on other grounds, and did not call for the special discussion of this point. But the consideration of the subject was necessarily involved in that case, and we see no reason to change the views there expressed.

The main question being thus disposed of, we have next to consider whether the act of 1858 is inoperative for want of specific provisions for its enforcement.

It is objected that there is no authority in this or any previous act for the appointment of a jury in the case of vacation, and certainly no express provision therefor has been shown. But, as already discussed, there was a well-known and long-established system of proceeding in regard to the opening and widening of streets in Philadelphia, under which juries were appointed and their duties regulated. Into this system the act of 1858 brought the vacation of streets by the express command that "it shall be the duty of juries selected to assess damages for the opening, widening, or *vacating* roads or streets," etc. It would be utterly nugatory and meaningless for the act thus to prescribe the duties of a jury which was not to come into existence at all. The words of the act, expressly including and assimilating the duties of juries for the opening and vacation of streets, necessarily imply the appointment in the latter cases as well as in the former.

There are other questions argued with great force by the learned counsel for appellant, but, so far as they are necessarily raised in this case, they are settled by the decision in Centre St. Very serious difficulties are suggested, in the lack of provisions for process, means of collection, and method of distribution of the assessments, etc. But none of them arise in this case, and perhaps they may never arise. The report of the jury must receive the approval of the court, and if it should show assessments for damages in excess of benefits, with no general benefit which the city could properly be called upon to pay, it would not be likely to be approved. Some embarrassment may be created by the verdicts of petit juries on appeals, but we may well leave these to be solved when they arise. Our duty is to give effect to the act if we can reasonably do so in accordance with settled legal principles, and we have no serious difficulty in doing so, to the extent called for by the present case.

Judgment affirmed.