The opinion of the Court was delivered by
Kennedy, J.
This case was determined in the Court below, upon the demurrer of the plaintiff, to the rejoinder put in by the defendant to the plaintiffs’ replication. The Court were bound to look into the whole record, and upon examination thereof, to give judgment for the party who, on the whole, appeared to be entitled to it. Notwithstanding then, that the rejoinder of the defendant may be insufficient, still if the plaintiffs have failed to allege what in law 'will amount to a breach of the condition of the bond on which the action is founded, they cannot claim to recover upon it. Piggot’s case, (5 Co. 29); Bates v. Cort, (2 Barn. & Cress. 474; s. c. 9 Eng. Com. Law. Rep. 151); Stephens on Pl. 175, 176.
It appears from the recital in the bond, that on the same day of its date, the testator of the plaintiffs sold and conveyed to the testator of the defendant a tract of land upon which “'certain incumbrances .by judgment and otherwise” existed. Among the incumbrances which existed otherwise than by was a balance of the *purchase-money, owing and unpaid to the commonwealth. As a security for the payment of this balance, the commonwealth merely retained the legal title to the land. And as a breach of the condition of the bond in suit, a neglect and refusal on the part of the defendant (not of his testator), to pay this balance to the plaintiffs, (not to the commonwealth to whom the money was actually due and owing), is assigned. But the condition of it is, not to pay this balance to the testator of the plaintiffs or his representatives, but merely to “save, indemnify, and keep harmless, the said John Brown, *102 (their testator) his heirs and assigns, against all and all manner of judgments, liens, claims, demands, suits, actions, charges, dues, troubles and expenses, whatsoever, which had arisen or accrued by reason of any mortgages, judgments, arrearages of purchase-money, principal or interest, due or to become due from the land therein before mentioned, &c., or which have arisen or accrued in any lawful manner whatever, affecting the said premises, or which the said John Brown (testator of the plaintiffs), may thereafter sustain, suffer, or be put to, by reason thereof.” Now it seems to be difficult, if not impossible to construe these words so as to make it the duty of the obligor to pay to the obligee or his representatives, the purchase-money due to the commonwealth for the land, without his or their having first paid the amount thereof to her. Had this been done, it is possible that according to the decision in Broughton’s case, (5 Co. 24), this action might have been sustained. In that case the plaintiff being bound in a bond of ¿6200, for the defendant, conditioned for the payment of ¿6100 to A. B., at a future day, took from the defendant the bond on which the action was brought, with a condition, that “ if the defendant should save and keep harmless the plaintiff for all suits, quarrels, and demands, touching and concerning the said bond of ¿6200, then the obligation to be void,” &c. On the day for the payment of the ¿6100, the defendant not appearing to pay it, the plaintiff did so in order to save the penalty of the bond; and it was held that the plaintiff was entitled to recover on his bond of. indemnity. For as the court say, “ the payment of the ¿6100 was a damage and harm to the plaintiff, and if he had not paid it, a greater harm would have followed; and it was not necessary that the plaintiff should be arrested or sued.” It was also said, that the plea non fuit damnificatus implied that the defendant had saved the plaintiff harmless, as by release, payment, or otherwise. The principle of Broughton’s case, was adopted by the King’s Bench, in Ld. Mansfield’s time; and ruled the case of Ker v. Mitchell, (2 Chitty’s Rep. 487; S. c. 18 Eng. Com. Law Reps. 399). In some respects, the situation of the plaintiff in Broughton’s case, was different from the present. There the plaintiff was bound personally, for the payment of the ¿6100 at a subsequent day; and had it not been paid at the day, he would have become personally liable to pay double the sum; but *here there was no personal obligation upon the plaintiffs or their testator at time to pay the commonwealth the balance of the purchase-money for the land, nor was it money that was to be paid before a certain day then to come ; the neglect of which would have rendered the testator of the plaintiffs liable to a penalty. The payment of the money to the *103 commonwealth might have been enforced by proceeding against the land, long before the giving of 'the bond in suit. Whether this difference, however, would have been sufficient to have exempted this case from the operation of the rule of decision in Broughton’s case, provided the plaintiffs or their testator had paid the money voluntarily to the commonwealth, is not a question that requires to be settled here; and is therefore passed without giving any opinion upon it. But without payment of it to- the commonwealth, or some attempt upon her part, to compel the payment of it, by proceeding against the land, I am at a loss to see how it can be said that there could be a breach of the condition of the bond in this respect. It is said that conditions of bonds are to be regarded as the words of the obligee, and ought therefore to be construed favourably for the obligor. Butler v. Wigge, (1 Saund. 66, a); Bose v. Day & Wife, (1 Wils. 61; 3 Salk. 95); Stanley v. Fearne, (3 Lev. 138); Eaton v. Butler, (Wm. Jones, 181). This rule, however, I apprehend, is to be understood as being more properly applicable when the words of the condition are ambiguous, or somewhat obscure. In such case doubtless the words are, generally, to be understood in that sense which is most favourable for the obligor. Turner v. Goodwin, (10 Mod. 154, 228). But still they must receive a reasonable construction, Colthirst v. Bejushim, (Plow. 30, 34,) according to the intention of the parties, so that it may be carried into effect. Thorpe v. Thorpe, (1 Salk. 171, 172.) And for this purpose a construction contrary to the words in the condition of a bond, has occasionally been given to it; as where it ran, “ If the obligor shall not pay a certain sum, &c., then the obligation to be void,” &c.; the word “ not” has been rejected as repugnant to the design of the obligation, as insisted by the whole tenor of it. Mills v. Wright, (1 Freem. 247 ; Ca. 261); s. c. Wells v. Wright, (2 Mod. 285); Vernon v. Alsop, (1 Lev. 77; s. c., 1 Sid. 105, 106); Wells v. Ferguson, -(11 Mod. 193, 199; s. c., 2 Salk. 463); Bache v. Proctor, (Doug. 383, 384).
It cannot be pretended, that the condition here is for the payment of the balance of the purchase-money to the state herself, within any specified time; and much less, certainly, to the obligee or his representatives. Nor can it be fairly said that any intention of the kind is manifested by its terms, yet it would have been easy to have said so, had it been so intended by the parties. And most clearly the obligee, unless the bond gave him a right to demand and receive the money, without more, from the obligor, had none whatever to it. But it is equally clear that the condition of the bond extends no ^further than to save, indemnify, and Iceep harmless, the obligee, his heirs and assigns, from all or any damage *104 or loss which should arise or accrue to him or them from its being due to the state and suffered to remain unpaid. I am willing to concede that it is so in terms; and this is the utmost that can be required by the plaintiffs, without a total disregard to the ordinary meaning of the words used therein, for there is nothing presented on the face of the instrument, that goes to show that more was intended. Taking this then to be the nature and the extent of the condition, I am willing also to concede, that if the obligee afterwards, being desirous of selling the land, had been offered more for it, discharged from the balance of the purchase-money due to the state, than subject to it; and he, in order to obtain the higher price, had paid the state, he would have been justified in doing so; and having become thus damnified to the amount so paid, would have been entitled to recover remuneration by action upon the bond. But it appears to me that it would be going too far, to say that without any proceeding whatever on the part of the state, having been instituted by her against the land to obtain payment, or the money having been paid to her by the obligee or his representatives, the condition of the bond is broken. I cannot think that less than an act of some kind on the part of the state, in relation to her claim against the land, was intended to be provided for by the parties in giving and accepting the bond.
It is alleged, however, that the defendant, as the executor of the obligor, admitted that the estate of his testator was liable under the bond to pay the state, and accordingly promised that he would do so. Suppose it to be true, that he did make such admission and promise, still that would not change the legal tenor and affect of the bond; and if he has made a binding promise, and has violated it, he cannot be called to answer for it by a suit upon the bond.
Again, it is alleged, that the defendant, as the executor of the obligor, agreed, in consideration that the plaintiffs would release Jacob Brown from the payment of so much of the consideration-money, due by him to the estate of the testator of the plaintiffs, upon a sale made of the land to him, by their testator in his lifetime, as would be equal to the amount of the balance of the purchase due to the state, that he, the defendant, would pay it to the plaintiffs; and that the plaintiffs, confiding in this promise of the defendant, did accordingly, release Jacob Brown, who undertook to pay the state, but, as is admitted, has not done so. It is impossible, as it appears to me, to conceive how a breach of such an undertaking by the defendant here can be converted into a breach of the condition of the bond of his testator. It is not contended, that the release by the plaintiffs of Jacob Brown would have entitled them to sue on the bond, if the *105 defendant had not been consenting to it, and promised payment of the sum released by the plaintiffs to Jacob Brown. This of itself would seem to show, that if there be any duty on the part defendant to pay, it does not arise upon the bond, but out of the promise made by the defendant. is not plain allegation plaintiffs, they have any right to demand the money of the defendant, that it is because they released a right which they had against Jacob Brown for the same amount of money, upon the faith and credit of the promise made by the defendant, and not because the bond of his testator provided for their doing so, and furnished a security to them for the payment of the amount thus released ? A collateral agreement by parol, may, it is true, be made, and if executed, may be sufficient to discharge or extinguish a bond, because by the agreement of the parties, it being executed, the obligee obtains satisfaction of the bond, and it would therefore be unjust, in any subsequent event, to permit him to set up the bond for the purpose of obtaining satisfaction a second time; but the agreement alone will not discharge or release any existing right under the bond; nor was it ever heard of, I think, that a refusal to perform such collateral agreement would amount, per se, to a breach of the condition of the bond, or give the obligee a right to sue and recover on it.
The judgment is affirmed.
Judgment affirmed.
Cited by Counsel, 6 Barr, 466.